### NACHMAN v. COMMISSIONER OF INTERNAL REVENUE.
### TOBIAS v. COMMISSIONER OF INTERNAL REVENUE.

No. 13083.

United States Court of Appeals
Fifth Circuit.

Nov. 2, 1951.

Rehearing Denied Dec. 6, 1951.

Chester Bedell, Malvern B. Fink, Joseph M. Glickstein, Jacksonville, Fla., for petitioners.

Irving I. Axelrad, Ellis N. Slack, A. F. Prescott, Francis W. Sams, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst.

Atty. Gen., Charles Oliphant, Chief Counsel, John M. Morawski, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and STRUM, Circuit Judges.

STRUM, Circuit Judge.

These are two consolidated petitions to review decisions of the Tax Court which modified as to amount, but otherwise sustained, deficiency assessments in income taxes entered by the Commissioner of Internal Revenue against petitioners Nachman and Tobias for their fiscal tax year 1944–45.

Desiring to enter the retail liquor business as partners in Jacksonville, Florida, petitioners on April 25, 1944, purchased from one Baker Bryan for $8,000 an existing liquor license, good until September 30, 1944, issued to Bryan by the City of Jacksonville for $750, the fee fixed by ordinance therefor. The difference between the official fee of $750 and the purchase price of $8,000 was a premium which Bryan was enabled to exact from petitioners because these licenses were restricted by law to approximately 76 for the entire City of Jacksonville, all of which were then issued. Many more persons desired them than could obtain them directly from the city, so they were in great demand, even at a premium. These licenses were assignable, and carried with them valuable renewal privileges, as it was the established practice in issuing renewal licenses from year to year to prefer the holders of existing licenses over other applicants. Because of this known practice, and the limited number of licenses available, persons wishing to enter the liquor business in Jacksonville were willing to pay a substantial premium in order to acquire a license from an existing licensee.

In making their income tax returns for the tax year involved, petitioners deducted as an ordinary and necessary business expense, the entire $8,000 paid for the license. The Commissioner disallowed all except 5/12th of the $750 annual fee, representing the unexpired portion of the license extending from April 25, 1944, the date of purchase, to September 30, 1944, when it expired. The Commissioner entered a deficiency assessment accordingly. On appeal, the Tax Court held that petitioners were entitled to deduct as ordinary business expense the entire $750 official fee, but no more, and reduced the deficiency accordingly. It is the latter determination by the Tax Court that petitioners bring here for review.

Of course it was necessary for petitioners to have a license before they could commence business. None could be procured directly from the City, as the maximum number allowed by law had already been issued. Like other scarce commodities, they commanded a premium on a seller's market. The license carried with it by established custom, if not by law, a valuable renewal privilege indispensable to petitioners' continuance in business in subsequent years. In purchasing the license, petitioners bought not only the operating right for the current year but also renewal privileges for future years. This privilege, entitling petitioners to preference over non-license holders in the issuance of renewal licenses, was of substantial value, of which the seller and the purchasers of this license were well aware. No one would pay $8,000 for a $750 license having only five months to run, unless the purchaser was reasonably sure it carried with it appurtenant privileges of substantial future value to the purchaser. It was these considerations that prompted petitioners to pay $8,000 for a $750 license, of which only 5/12ths remained.

Of the $8,000 paid for the license in question, the official cost of issuance, $750, was an ordinary and necessary business expense. The remaining $7,250 was the expenditure of capital in the acquisition of a capital asset reasonably expected to serve petitioners through future years, the cost of which is not deductible as an ordinary expense. Jones' Estate v. Commissioner, 5 Cir., 127 F.2d 231; Hotel Kingkade v. Commissioner, 10 Cir., 180 F.2d 310; All States Freight v. U. S., D.C., 72 F.Supp. 673; Elston Co. v. U. S., 86 Ct.

Cl. 136, 21 F.Supp. 267; McAvoy Co. v. Commissioner, 10 B.T.A. 1017; Zakon v. Commissioner, 7 B.T.A. 687. The Supreme Court of Florida has recently recognized a liquor license as "property," often having an actual value far in excess of the official fee charged for it. House v. Cotton, 52 So.2d 340.

■ Petitioners further contend that if the $7,250 in question be regarded as the purchase price of a capital asset and therefore not deductible as ordinary business expense, they are entitled to an amortized depreciation allowance on such capital asset under 26 U.S.C.A. § 23, and Treasury Regulation No. 111, sec. 29.23(1)–3, relating to depreciation of intangible property. Depreciation allowance on intangibles, however, is confined to those definitely limited in duration, such as patents, franchises, copyrights, licenses for fixed periods, and the like, the partial exhaustion of which may be computed with reasonable certainty.

■ It is clear that the renewal privilege appurtenant to this license extends beyond, and was actually exercised beyond, the taxable year in question. Presumably the petitioners may continue to exercise their renewal privileges as long as they desire, as there is no indication that the City will depart from its custom of renewing existing licenses. How long petitioners may wish to continue exercising their renewal privileges is indeterminable. It might be for one year, or many. It was exercised by them at least as late as 1949. The basis for depreciation of an intangible capital asset is partial exhaustion due to lapse of time. This renewal privilege being of indefinite duration, dependent upon petitioners' wishes as well as upon the City's future course of action, there is no rational basis for prediction as to duration.

Moreover, if petitioners elect to discontinue the exercise of their renewal rights, it is reasonable to assume that they will sell them, just as did their predecessor Bryan, either recouping their investment or sustaining a deductible loss. We conclude therefore, as did the Tax Court, that the renewal privilege incident to the license is a nondepreciable capital asset. Clark

Thread Co. v. Commissioner, 3 Cir., 100 F.2d 257.

We have examined the cases cited by the petitioners in support of their contentions, but consider them inapposite here.

Affirmed.