DOW CORNING CORPORATION, A MICHIGAN CORPORATION, (SUCCESSOR BY LIQUIDATION TO THE ALPHA-MOLYKOTE CORPORATION, A CONNECTICUT CORPORATION, DISSOLVED), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4158–66.  Filed October 20, 1969.

*Albin E. Ulle*, for the petitioner.
*Gary F. Walker*, for the respondent.

OPINION

TIETJENS, *Judge:* The Commissioner determined a deficiency in petitioner's Federal income tax for fiscal year ending April 30, 1964, in the amount of $2,181.90. By agreement of the parties, only one issue remains for our determination. That issue is whether petitioner is entitled to deduct an expenditure of $4,250 made in connection with the acquisition of certain rights to a trademark, as an ordinary and necessary business expense under section 162 of the Internal Revenue Code of 1954[1] for the fiscal year ending April 30, 1964, or whether such expenditure is in the nature of a capital expense and hence not deductible under section 263.

Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference.

Dow Corning Corp. (hereinafter referred to as Dow) is a corporation organized under the laws of the State of Michigan, having its principal office in Midland, Mich., at the time the petition herein was filed. On March 23, 1965, Dow became the successor by liquidation to the Alpha-Molykote Corp., a corporation organized and existing prior to March 23, 1965, under the laws of the State of Connecticut, having its principal office in Stamford, Conn.

The Alpha-Molykote Corp. (hereinafter referred to as Alpha) filed its corporate income tax return for its fiscal year ending April 30, 1964, with the district director of internal revenue in Hartford, Conn. Alpha kept its books on the accrual basis of accounting.

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.

On November 15, 1963, Alpha and Molykote Produktionsgesellschaft m.b.H. (hereinafter referred to as MPG), a limited liability company organized and existing under the laws of the Federal Republic of West Germany, entered into a written agreement concerning the use of a certain trademark, "Molygliss." MPG was the owner of this trademark by virtue of an agreement also dated November 15, 1963, between itself and Molykote K.G., Kraus, Kuhn-Weiss & Co. (hereinafter referred to as KG) which gave to MPG "all the rights for using the trade-mark Molygliss" from that day on, pending the completion of registering the trademark under German law, at which time KG "intended to transfer to * * * MPG the trade-mark right." KG was able to effectuate this transfer to MPG due to an earlier agreement of 1962 by which KG had purchased the trademark from a Swiss corporation and had proceeded to register it under its own name with the German patent office on January 24, 1963.

The agreement between Alpha and MPG was executed entirely and solely in German. Dow of its own volition forwarded to respondent's agent an English translation of the agreement which reads:[2]

CONTRACT

Between

Molykote Produktionsgesellschaft mbH, Munich 19 Arnulfstrasse 71,

—referred to hereafter as MPG—

and

The Alpha Molykote Corp., 65 Harvard Avenue, Stamford/Conn., USA

—referred to hereafter as Alpha Molykote—

commercial relations have been in existence for years. Alpha Molykote intends to market certain products in the field of the lubrication technique under the designation "Molygliss." MPG owns the right to the trademark "Molygliss" (German trademark 769 719, IR-Marke 173 726). Between the two parties the following was now agreed upon.

I

MPG grants exclusively to Alpha Molykote the entire rights for the use of the trademark "Molygliss" for lubrication products in all countries of the world.

This exclusive authorization for use entitles Alpha Molykote to the application and registration of trademarks in its own name and for its own account in all countries in which heretofore MPG did not register the trademark "Molygliss." Any rights which have originated with first or consequent use of the trademark "Molygliss" also belong to Alpha Molykote.

---

[2] At trial, petitioner introduced into evidence a second translation of the same agreement. This second copy differed from the first in two instances; in the paragraph numbered I the word "solely" is inserted for the word "exclusively" both times the latter word appears.

## II

Alpha Molykote will make to MPG a one-time lump sum payment of U.S. $4,000.00 for the granting of the use of the trademark "Molygliss" and also U.S. $250.00 as share of the cost of registration.

## III

MPG is obligated to take, upon request of Alpha Molykote, all necessary measures for the defense of these registered rights in all areas in which, at the time of the conclusion of this contract, MPG had existing registrations and/or for the extension of these rights and/or the pursuit of infringement negotiations and filing objections especially in case same or similar designations which could be confused with "Molygliss" are being used by others than Alpha Molykote.

## IV

(1) Alpha Molykote agrees to assume all expenses incurred in connection with maintaining and defending the rights to the trademark.

(2) Alpha Molykote agrees in particular to bear all expenses incurred directly or indirectly by MPG through defending and maintaining the protective rights in the case of proceedings according to III and to protect MPG against all claims from third parties resulting possibly from such proceedings.

## V

The parties expressly agree that this Contract shall be governed by and in accordance with the laws of the Federal Republic of West Germany, as interpreted by the Munich Court.

MUNICH 11/15/63                          STAMFORD, 11/15/63
(Signed)   F. KUHN-WEISS                   (Signed)   A. Sonntag, *Pres.*
          MOLYKOTE                        THE ALPHA MOLYKOTE CORP.
Produktionsgesellschaft mbH

At no time since the execution of the above agreement has Dow or Alpha ever requested that the money paid pursuant to the agreement be refunded; nor has Alpha, Dow, or MPG ever requested the rescission of the agreement.

On its tax return for fiscal year ending April 30, 1964, Alpha deducted the full $4,250 payment specified in the agreement as an ordinary and necessary business expense. The Commissioner determined that such expense was capital in nature and hence not deductible by virtue of section 263.

We must decide if Alpha was correct in taking the deduction. We hold that it was not.

Petitioner places great weight on that portion of the agreement stating the "this Contract shall be governed by and in accordance with the laws of the Federal Republic of West Germany." However the laws of West Germany may affect the rights of the parties *inter se*, such is not binding on the functioning of the revenue laws of the United States. The manner and extent of the liability of the parties for Federal taxes is determined by Federal tax law. See *United States* v. *Akin*, 248 F. 2d 742, 744 (C.A. 10, 1957), and cases cited therein.

Petitioner devotes a great deal of time arguing that under German law the agreement between Alpha and MPG cannot be a sale of the trademark "Molygliss" because a sale thereunder would require more than the transfer of the naked trademark and the rights which MPG allegedly reserved to itself under German law, to wit: ownership, use of the trademark, and the right to prosecute infringements of the trademark, label the agreement as no more than a license and hence the $4,250 is properly deductible as an ordinary and necessary business expense.

However, we feel that such a tack is incorrect. What is important here is not what Alpha did not receive, rather it is what Alpha did receive.

an expenditure should be treated as one in the nature of a capital outlay if it brings about the acquisition of an asset having a period of useful life in excess of one year *or if it secures a like advantage to the taxpayer which has a life of more than one year*. [Emphasis supplied.]

*United States* v. *Akin*, 248 F. 2d 742, 744.

As we have recently stated: "Our primary consideration * * * should be the length of time the benefit * * * is reasonably expected to endure," *Arthur E. Ryman, Jr.*, 51 T.C. 799, 802 (1969). This is so because:

Our income taxation is a plan to match the income and expenses of a given taxable year so as to tax only that which is net income. *An expense which results in the acquisition of even an intangible business advantage which benefits the taxpayer for more than one year*, therefore, *may not be deducted as a current business expense*. [Emphasis supplied.]

*Darlington-Hartsville Coca-Cola B. Co.* v. *United States*, 273 F. Supp. 229, 231 (D. S.C. 1967).

One has only to peruse the agreement between Alpha and MPG to conclude that what Alpha received is an intangible business advantage with a benefit stretching beyond the taxable year. Alpha received the "entire rights for the use of the trademark 'Molygliss' for lubrication products in all countries of the world." There is no time limit in the agreement nor is one mentioned anywhere in the record. There is testimony from Friedrick Kuhn-Weiss, one of petitioner's witnesses, and a signatory of the agreement that the name "Molygliss" was a good internationally registered name and very descriptive, thus enhancing its importance and value.

We do not pass on the question of whether MPG sold the name "Molygliss" to Alpha, i.e., sold a capital asset, because the Code, sec. 263, does not require the acquisition of a capital asset; all that is needed is "permanent improvements or betterments made to increase the value of any property or estate." One would be hard pressed to

say that the acquisition of the unlimited right to use an internationally registered trademark possessing a highly descriptive name would not be a permanent betterment to Alpha or that the benefit to Alpha is confined solely to the year of acquisition.

*Decision will be entered for the respondent.*