RICHARD S. HARMAN AND MICHELLE HARMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1880–77.    Filed May 21, 1979.

*Sidney Eagle,* for the petitioners.
*Ellis L. Reemer,* for the respondent.

OPINION

IRWIN, *Judge:* Respondent determined a deficiency in petitioners' joint Federal income tax for the calendar year 1973 in the amount of $3,375.

A concession having been made by petitioners, the only issue for our decision is whether the initiation fee which was, in effect, paid to become a beneficial member of the New York Stock Exchange represents a capital expenditure or an ordinary and necessary business expense.

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts, along with attached exhibits, are incorporated herein by this reference.

Petitioners Richard Harman and Michelle Harman, husband and wife, resided in New York, N.Y., at the time of filing their petition herein. Since Michelle Harman is a party hereto solely by reason of having filed a joint return for the years in issue, references to petitioner will hereafter be considered as references to Richard only.

Membership in the New York Stock Exchange (hereafter Exchange) is evidenced by ownership of a seat and there are a limited number of seats or memberships on the Exchange. During the period January 1, 1968, through December 31, 1973, all seats or memberships in the Exchange had been issued. Thus, an applicant desiring a membership in the Exchange during this period would have to acquire his seat from another member. During this same period, the constitution and rules of the Exchange provided that a two-thirds vote of the membership was necessary before an applicant could be admitted as a member of the Exchange.

A seat on the Exchange has to be maintained in the name of an individual; thus a corporation can not maintain a seat in its corporate name. However, a corporation can become a "member corporation" if a requisite number of its directors are themselves members of the Exchange.

It is a common practice for corporations to purchase seats on the Exchange to be maintained in the name of a particular shareholder or director of the corporation. In such a situation, the corporation is known as the "beneficial owner" of the seat and the shareholder or director, in whose name the seat is maintained, is known as the "nominal owner."

An individual lacking sufficient funds to purchase a seat and apply for membership in the Exchange is able to obtain a seat by becoming a shareholder in a member corporation. Upon becoming a shareholder, membership could come about in one of two ways: (1) The corporation could transfer nominal ownership of a seat presently owned by the corporation and maintained in the name of another shareholder to the individual, and the individual would enter into an agreement (standard "a–b–c" agreement prepared by the Exchange) to this effect with the corporation

and would file an application for membership with the Exchange; or (2) the corporation could advance to the individual the funds necessary to purchase a seat owned and maintained by a person unaffiliated with the member corporation. Again, the individual would then apply to the Exchange in his own name to have his membership approved.

If the membership committee approves the application of the individual for membership by the requisite two-thirds vote, the applicant is informed and transfer of the seat is completed. In both cases, the corporation is the beneficial owner of the seat and the individual applicant is the nominal owner.

Upon election to membership in the Exchange, each member is required to pay to the Exchange an initiation fee. During the period January 1, 1968, through December 31, 1973, the constitution and rules of the Exchange provided that the initiation fee was $7,500. If the fee is not paid by the membership applicant on the day of his election to membership, the election is void. The initiation fee is payable to the Exchange and is nontransferable and nonrefundable even if the Exchange were to dissolve. A member does not obtain an equity interest in the Exchange by virtue of paying the initiation fee. In addition to this initiation fee, annual dues are assessed against each member.

The initiation fee is paid by a member-elect to obtain and exercise the privilege of using the Exchange's services and facilities. It has to be paid each time there is a change in either nominal or beneficial ownership of the membership.

In January 1968, petitioner, Richard Harman, joined the New York City brokerage firm of Cohen, Simonson & Rea, Inc. (hereafter Cohen). He purchased 20,000 shares of Cohen's voting stock, said shares representing 1.9765 percent of that corporation's outstanding voting stock.

At that time, Cohen had beneficial ownership of two seats of membership in the Exchange. When petitioner joined the firm, nominal ownership of one such seat was transferred to him. A standard "a–b–c" agreement was entered into between Cohen and petitioner, and an application for membership in the name of Richard Harman was filed with the Exchange. Upon the application's approval, Cohen paid to the Exchange the $7,500 initiation fee. The standard "a–b–c" agreement entered into between Cohen and petitioner provided that should the petitioner decide to cease his participation in Cohen and yet retain his

membership, he would be obligated to pay to Cohen the amount necessary to purchase another membership. Petitioner was also obligated to pay to Cohen the $7,500 initiation fee that would be payable to the Exchange when Cohen transferred the nominal ownership in the replacement seat to another shareholder.

Petitioner continued as a member of the Exchange and as a shareholder in Cohen until August of 1973, when he decided to go into business for himself. Pursuant to his agreement with Cohen, petitioner, in August of 1973, paid Cohen the sum of $80,500. Of this amount, $73,000 represented the amount that it would cost Cohen to purchase a replacement seat or membership in the Exchange. Petitioner also paid Cohen $7,500 to cover the initiation fee that would be payable to the Exchange when Cohen transferred the nominal ownership of the replacement seat to another shareholder. Petitioner's shares in Cohen were also redeemed. By virtue of this transaction, petitioner obtained the beneficial as well as nominal ownership of the seat or membership which had been maintained in his name since January of 1968.

From August 1973 through the remainder of that taxable year, petitioner worked on the floor of the Exchange as a self-employed broker. On Schedule "C" of their 1973 Federal income tax return, petitioners claimed a deduction for the $7,500 paid to Cohen to cover the initiation fee payable with respect to the replacement seat. The respondent determined that this amount constituted a capital expenditure and was, therefore, nondeductible.

We are therefore faced with the issue of whether payment by petitioner to Cohen of the $7,500 initiation fee that would be payable to the Exchange when a replacement seat was purchased and transferred to a shareholder of Cohen constitutes an ordinary and necessary business expense or a nondeductible capital expenditure.

In 1968, petitioner obtained nominal ownership of a seat on the Exchange when Cohen transferred a seat it beneficially owned into petitioner's name. In 1973, petitioner decided to go into business for himself. Pursuant to the "a–b–c" agreement with Cohen, petitioner retained his membership on the Exchange and paid Cohen the amount necessary for Cohen to purchase a replacement seat. Additionally, petitioner paid Cohen the $7,500 that would be payable to the Exchange when the

transfer of a replacement seat to a nominee of Cohen was effectuated. It is this $7,500 payment that petitioner seeks to deduct as an ordinary and necessary business expense.

As an initial matter, the fact that petitioner chose to retain his seat and provide a replacement seat rather than relinquish his seat and purchase a new one for himself, both respondent and, apparently petitioner, agree, is a difference without a distinction. We concur. We believe the substance of the transaction in question is an outright purchase of a seat on the Exchange and should be treated as such for tax purposes. In an outright purchase in 1973, the buyer, in addition to paying for the seat, also had to pay the $7,500 initiation fee.

Petitioner argues that the initiation fee paid to become a member in the Exchange was an ordinary and necessary expense because it did not increase the value of his seat nor did it create an independent asset. Each time the owner of a seat wants another party to use the facilities of the Exchange, he has to pay an additional initiation fee. Respondent counters with the proposition that the initiation fee was expended in order to obtain a business benefit which extended beyond the taxable year of payment and which had an indefinite useful life and is, therefore, a nondeductible capital expenditure under section 263[1] rather than an ordinary expense under section 162(a)(1).

A capital expenditure is an amount expended for the acquisition of an asset having a useful life beyond the taxable year. *United States v. Akin*, 248 F.2d 742 (10th Cir. 1957), cert. denied 355 U.S. 956 (1958); *Ryman v. Commissioner*, 51 T.C. 799 (1969). Sec. 1.263(a)–2(a), Income Tax Regs. A seat on the Exchange is such an asset. See *Whitney v. Commissioner*, 73 F.2d 589 (3d Cir. 1934).

Petitioner, however, relies on the case of *Lehman v. Commissioner*, a Memorandum Opinion of this Court dated October 1, 1942, to support his proposition that the initiation fee herein at issue is deductible. In that case, a partnership owned seats on 12 stock and commodity exchanges. As in the case before us, the seats had to be held in the name of an individual partner. During a year in which a partner in whose name four of the seats were carried died, it became necessary to transfer those seats from his

---

[1]All statutory references are to the Internal Revenue Code of 1954, as in effect during the taxable year in issue.

name to that of another member of the firm. Two of the exchanges required a payment of $1,000 for the transfer of the seats from the name of the deceased partner to that of a surviving partner. The respondent disallowed the $2,000 as a deduction on the ground that it constituted a capital expenditure. The Board of Tax Appeals, however, disagreed with the respondent. It held that the expenditure was not made for the acquisition of a capital asset nor to acquire the use of an asset owned by another. The Board pointed out that beneficial ownership of the seats never changed and that the transfer fees were necessitated only by the requirement of the exchanges that title (nominal ownership) be held by an individual. There was no transfer of a capital asset.

We believe, as is pointed out by respondent, that *Lehman* is factually distinguishable from the case before us because in *Lehman* beneficial ownership remained with the partnership both before and after the transfer. In the instant case, the transfer was intended to and did effectuate a change in beneficial ownership; a capital asset changed hands. Petitioner acquired beneficial ownership (to go along with his nominal ownership) of the seat on the exchange. No one could become a member of the stock exchange without paying the initiation fee as well as for the seat. We see no reason for not treating payment of this fee as part of the acquisition cost of the seat itself.

The only question which could remain would be whether the initiation fee which had to be paid to the Exchange as a result of the transfer of the seat is an amount paid in connection with the acquisition thereof. We believe that it is. The initiation fee was an amount expended in connection with the acquisition of the membership (see *Bradley v. Commissioner*, 41 B.T.A. 153 (1940) (which dealt with the initiation fee of a stock exchange as being part of the cost of membership)), and it secured a business benefit to petitioner which lasted beyond the taxable year. *United States v. Akin, supra.*

We also note that in other cases involving initiation fees, we have consistently held that initiation fees payable to an organi-

zation, the services of which benefit the taxpayer in his business, are nondeductible capital expenditures.[2] *Webb v. Commissioner,* 55 T.C. 743 (1971) (initiation fee paid by real estate broker to join multiple listing service); *Ryman v. Commissioner,* 51 T.C. 799 (1969) (attorney's cost of bar admission); *Heigerick v. Commissioner,* 45 T.C. 475 (1966) (a payment made by a doctor to secure staff privileges at a hospital); *Mercantile National Bank at Dallas v. Commissioner,* 30 T.C. 84 (1958), affd. on other grounds 276 F.2d 58 (5th Cir. 1960) (initiation fee paid to an athletic club); *Grace National Bank of New York v. Commissioner,* 15 T.C. 563 (1950), affd. 189 F.2d 966 (2d Cir. 1951) (a national bank paid an admission fee to join a clearinghouse association). Accordingly, amounts expended for the acquisition of a seat on the Exchange are capital in nature and, therefore, are not deductible.

Thus, we hold that the initiation fee is part of the purchase price of a membership on the Exchange. As such, it is to be added to the cost basis of that membership.[3]

*Decision will be entered for the respondent.*

---

[2]Most recently see *Snell v. Commissioner,* T.C. Memo. 1979–141 (initiation fee paid to become a member of Lloyd's of London).
[3]See Rev. Rul. 77–354, 1977–2 C.B. 50, which reaches this result.